The next matter is number 22-1740 Nancy Roe et al. versus Maura Tracy Healey et al. At this time would counsel for the appellant please introduce himself on the record to begin. Yes and again my apologies Rory Bell and Tony for the plaintiffs in this matter. I'd like to reserve three minutes for a vote. You may. In March of 2020 because of the pandemic that affected us schools closed throughout the state for all children. However the school closures affected some children more than others and that's what this case is about. The closings affected children with disabilities children who had IEPs that needed to learn in person had IEPs that required hand-over-hand services. Kids that went home and just could not learn the same way their neurotypical peers could. In dismissing this case the district court erred in several ways. First I believe the free appropriate public education is an injury in and of itself. The children that went home and couldn't learn remotely regressed or failed to progress which is what their IEPs are supposed to help them do. Sure when when the IEPs were done I'm assuming no one was contemplating the possibility that we'd have a pandemic that would shut down major institutions including schools. Correct. And then I take it you're not challenging the ability of the state of Massachusetts in a public health emergency to close the schools. No this didn't focus on challenging either the governors or any local authorities how to close the schools. It's what happens once they're closed. Okay so once they're closed it seems reasonable as you say to think that there would be some students whose IEP under the expected circumstances that everyone had assumed would be the case prior to the pandemic their IEPs would have worked then but then under this new situation where they're all remote then that would be a problem for some kids. Correct. And it isn't the procedure then to follow is that for those children for whom the their circumstances for those children to then request a new IEP or bring an administrative process if it wasn't provided. If the parents had the resources to do that. Well just the way the statute works if you think your IEP is not working and is inadequate doesn't the statute provide a remedy which is go make a claim and ask for your IEP to be changed. Yes your honor but in this case the IEPs in the first instance were working. Those were the educational programs these children needed in-person learning when the U.S. Department of Education said that remote learning may be used during the pandemic and the district court on page 10 of his opinion cites that guidance. He leaves out a crucial part of the guidance that that guidance said that the parents should be consulted just like they're supposed to be under the IDEA in the first. Excuse me counsel but that avoids rather than answers Judge Teodos question. So isn't the remedy when there's a frustration of the IEP in that manner to go through the administrative process. It is one remedy your honor it is one remedy. However in Honig the supreme court said children may not miss more than 10 days of school cumulatively in a school year. Now I understand the pandemic is an exception but the supreme court hasn't carved out a pandemic exception. In fact no court has yet said there is a pandemic exception to the IDEA. Secretary DeVos said there is not. She refused to grant waivers. She said these children still need to get a free appropriate public education. She said you can use remote learning but she also said again parents must be consulted so that we can figure out whether remote learning is appropriate or maybe in-home learning is appropriate. We can send somebody to the house to teach certain students. I understand that parents can't always file a DPC but in Honig the supreme court said the parents shouldn't have to. I believe in Honig the suspension in Honig went for 30 or 60 days. The supreme court said it shouldn't be up to the parents to have to run the court. If the school district want to keep the kids out of school more than 10 days they need to come to the court. They need to either start a due process proceeding or get permission from the court and again would it have been unreasonable in the first 10 days to create an IEP for them like this? Sure but some of these students, two of the students, were home learning for a year or home not learning for a year. They were remote. Certainly in that time period the school district could have done something to alleviate the harm that was accruing as a result of trying to learn from home and not being able to do so. But assuming the school district didn't do anything, doesn't the statute provide a route for advocating for that position by the parents? The statute does provide a route for advocating that position and case law also provides a especially when, and as we argue below, I believe given that the students were out of the program for more than 10 days they were entitled to be put back in the state court. But stay with the process. We've got an agreement on at least there was a route through the statute through the IDEA. Hasn't the supreme court told us that and the statute as well in our own case law that if a remedy is available under that route then you can't pursue any other route? No. In Perez versus Sturgis they just held that if you bring an IDEA action and there are other causes of action that you bring, if the relief that you're seeking under the IDEA is not available that case can proceed under one of the other theories that are in case. I think you just said the flip side of what I said. You're saying if it's not available under the IDEA you can go the other route. Isn't another way of saying that is that if it's, if it is available under the IDEA then you can't go another route? Doesn't your ability, put it this way, doesn't your ability to pursue a non-IDEA claim turn on whether the remedy you're seeking can be obtained through the IDEA process? And if it can then you can't go the other route. But it depends on the remedy. Initially we were seeking. Okay. So what remedy are you seeking here in your complaint in this case that could not be obtained under the IDEA administrative remedy route? Well, simply in the first instance, the declaration that what the school did was wrong and nominal damages. And under the Supreme Court case of, and I can't pronounce this, I apologize, Uzwegbonem versus Przewski, Supreme Court said that nominal damages provide a necessary redress for a completed violation of a legal right and that's not something a hearing officer is going to do. Okay. I've heard you say two things. You said your remedy for declaratory relief couldn't be obtained under the IDEA route and nominal damages couldn't be obtained. Well, they would go hand in hand. You couldn't get the nominal damages, I presume, unless somebody declares that a legal right was violated. Okay. So all that we're talking about, it seems to me, is should the district court have allowed you to pursue a claim for declaratory relief entitling you to nominal damages? There was, the answer I believe the Supreme Court said was yes. And the Supreme Court case that I'm citing, very similar, the students, although not under the IDEA, challenged free speech rules on college campus. Right. But I'm trying to get your, I'm trying to understand what you're saying is what we're hearing about today is the issue before us is whether you should be able to go back to the district court to pursue a claim for declaratory relief and nominal damages and nothing more. There was additional relief sought in the complaint. Oh, okay. Compensatory education for as long as each student was out of school. Time out. I thought you said the two forms of relief that weren't available under the IDEA were declaratory relief and nominal damages. Are you now saying there's a third form of relief? I had not finished, Your Honor. I started with those because I think the Supreme Court case is clear that the case should not be dismissed. What's the third? Well, there was also, we were seeking compensatory education that the administrative process can't provide. And that would be if the children, as they get older, I think my clients are now 20 and 19, or they're both 20. As they approach 21, they're not entitled to any education under the IDEA any longer. We were also seeking compensatory relief beyond the age of 21 that an administrative hearing officer can't give them. At the time, we were also seeking, although there's a mootness argument now, an order from the court under 1415J declaring each student's pendency placement, their in-person placement, consistent with the IEP that was in effect when the school districts closed. So if the school's closed again, it's clear that those children need to continue getting the education they were getting, whether at school or home or somewhere else. But they at least need to keep getting that education. But since the children are back in school, isn't that claim moot? The pendency argument? Yeah, the claim that you want an injunction or you want an order saying that if this situation occurs again, these students should be kept in school or given some other special relief. Isn't that all moot? Because the executive order has ended and schools are back in normal operation. The mootness argument does turn on whether or not there's sufficient evidence to show that the schools are likely, or there's a possibility that they will close down again in the future as a result of COVID or one of its variants. No, it depends on more than that, because it's not only got to be caped to avoid mootness. It's not only got to be capable of repetition, but it also has to be shown to evade review. And there's no indication here that this suit or a suit like this couldn't have been brought immediately upon the closure of the schools. The fact that the plaintiffs waited for two years in this case doesn't mean that they had to wait. I understand and I understand it would have been better to bring it sooner. I just submit that given that there is a chance of a recurrent, the variants causing school to close again, I don't think it would be moot to say that we're going to define the pendency placement that the IDEA allows for in the first instance and require the school districts, should this happen again, to make sure that the children don't go home and spend a year or two years not learning. Thank you. Thank you. Thank you, counsel. At this time, if counsel for the Appley Healy et al would please introduce herself on the record to begin. Good morning, Assistant Attorney General Cassandra Bolaños for the State Defendant's Appellees. I'd first like to address the argument that nominal damages would be exempt from the IDEA's exhaustion requirement. As an initial matter, the prayer for relief does include nominal damages, but twice in a briefing to the district court, plaintiffs disclaimed any request for nominal damages. That's at ECF number 38, where they twice said, quote, plaintiffs, quote, have not sought monetary damages in this case. And the district court expressly construed the complaint as one that seeks declaratory and injunctive relief. On appeal, plaintiffs did not raise any argument in their briefing that the district court got that wrong and should have construed their complaint as one seeking nominal damages. So on that basis, there's a significant waiver argument, waiver issue with now arguing that nominal damages saves them from the IDEA's exhaustion requirement. Nominal damages would certainly be unavailable against the state under at least section 1983, and it's not clear from the complaint under what causes of action plaintiffs are entitled to nominal damages. And you'd also, to obtain nominal damages, you'd still need a particularized injury and cognizable legal cause of action, as the district court noted in footnote 10 of its opinion. And all of the FAPE-based claims fail under Rule 12b-6. And here there was no, certainly, this court could conceive of a case where remote instruction did deny a student a FAPE because they couldn't access some services in their IEP. But that's not alleged here as to any of these three specific plaintiffs. There are very bare bones allegations here that say that three students had IEPs. It lists the services in their IEPs. And then the complaint says that beginning in March of 2020, these plaintiffs received virtual and remote instruction. But the complaint does not allege that any of the specific services in the IEP could not be provided through a remote platform, nor does it even say that any of these specific individual plaintiffs suffered specific learning regressions or deficits as a result of any disruption at the onset of the pandemic. So they haven't pled a particularized injury as to any of these three plaintiffs. And this information was squarely within the knowledge of the plaintiffs. In addition, really the focus of this lawsuit, both in the district court and on appeal, was plaintiffs' request to seek injunctions against future school closures and to obtain declarations that the manner in which schools were temporarily closed in March of 2020 was unlawful. But indeed, as plaintiffs themselves distilled it in their reply brief, they said, while students are now being educated in person, they seek a guarantee this will continue in the face of strikes, understaffing, or illness outbreaks. But there's a very clear jurisdictional bar from this court granting that type of relief. First, plaintiffs did not have standing to obtain this relief at the time they filed suit in October of 2021, because by that point, the state's temporary cessation of remote instruction, which occurred from mid-March of 2020 until June 29th of 2020, had already expired for a year and four months. So it had been a year and four months since there was any state-imposed barrier to providing in-person instruction. Even more significantly, five months before they filed suit, in May of 2021, the Department of Elementary and Secondary Education required all schools to return to full-time in-person instruction. Can I ask you a question? If a parent, in circumstances such as we faced, chooses to go along, understanding that this is a crisis and extreme exceptional situation, and then discovers a couple of years or a year and a half into the pandemic that their child is falling behind, is there no opportunity for a suit for compensatory education? Or is there an administrative process that's available at that point? I, you know, I'm not aware of any kind of specific limitations, period, for deficits related specifically to COVID. But under the IDEA, any time a parent understands that the IEP has not been properly implemented, such that their child has suffered a harm in educational progress, they can, that's what the administrative process is designed to do. And it's designed to provide services and compensatory services that will address the individual deficits of the children. So it's not the position of the defendants that they were too late in acting. It's just that they didn't exhaust. Here, they didn't exhaust. Two of the students have graduated. And one plaintiff settled a claim in the BSEA with the BSEA. Okay. This case is also moved for similar reasons because now there's been in-person instruction for two years. And it is critical that the entire legal framework and regulatory framework of the IDEA, it's called the Individuals with Disabilities Education Act because it's focused on the needs of individual students. And that's why individualized determinations that can be made in an administrative proceeding are so important here. And it is important to acknowledge the relief that the BSEA could have provided had plaintiffs exhausted administrative remedies. There's been a suggestion, counsel, that the claim for compensatory education may save the case from mootness. What do you say to that? I disagree because compensatory education is something that is squarely within the expertise of BSEA hearing officers. And it really depends on the individualized circumstances of each student, the type of disability, the degree of disability. So for one student, what might be important is getting in-person occupational therapy. And even when schools were providing remote instruction in 2020 of 2021, the BSEA could have ordered in-person OT or physical therapy for individual students. So each student could have gotten redress on an individual basis to receive services that were tailored to any specific deficits or disruptions in their learning needs. So are you saying that the claim for compensatory educational payments is non-exhausted or moot or both? The claim for compensatory damages is not exhausted. And plaintiffs have not argued in their brief. Their exhaustion arguments were geared specifically towards their request for a system-wide injunction against future school closures. They did not make any arguments in their briefing that their request for compensatory services was exempt from the exhaustion requirement. Unless there are further questions, we'd ask that this court affirm the district court judgments for the reasons in our brief and that argument. Thank you. Thank you, counsel. At this time of counsel for the Appalese, the Somerville Public Schools, and all the schools, would please introduce himself on the record to begin. Good morning, Your Honors. Joshua Coleman, excuse me, for the Somerville Public Schools. With me are co-counsel Adam Sims and John Simon for Wellesley and Brookline Public Schools. I'll just be brief. I think a few points to clarify. The BSEA administrative process, there was no statute of limitations exceeded within this case. And two of the plaintiffs, they voluntarily, they filed at the BSEA in a timely manner, and then they voluntarily withdrew their claims. They were actually represented, I believe, at least two of the cases by the same firm that Roy, Bell, and Tony is from. And furthermore, in the third case, the Somerville student subsequently withdrew. Are you saying that there is no actual plaintiff left with an adverse interest in this case? That's exactly what I'm saying, Your Honor. Two have graduated, one in 21, one in 22. And the child in Somerville, who was, I believe, five or six at the time, is no longer enrolled in the Somerville Public Schools. Furthermore, the schools- And do those facts, I understand the ages are of record, but do the facts you've just recited, that two have graduated and one has withdrawn, do those facts appear on the record? There's a footnote, I believe, in the district court decision from Judge Stearns  The one who withdrew, that was referenced, I believe, in our affidavit submitted in district court in the district court pleadings in our brief. Furthermore, I'd like to emphasize we complied explicitly with the U.S. DOE guidance. And furthermore, what my brother ignores is there were remote learning plans. We specifically provided remote learning plans. They failed- Could you come back to Judge Salia's question? So you're saying of the three plaintiffs, one has actually withdrawn from this lawsuit? No, one has withdrew from the Somerville Public Schools, Your Honor, attending school elsewhere, I believe. And the other two graduated in June of 21, June of 22. Those are in a footnote, I believe, of Judge Stearns' decision. And you're saying that therefore, none of those three have standing to pursue the claims, including the claim for compensatory relief? Well, they failed to exhaust their administrative remedies because they voluntarily withdrew. That's a different defense. That's exhaustion. Right, but correct. They have no standing. If they have a claim for compensatory relief still, how could we say they don't have standing? Well, they have to pursue that. They don't have standing in this court because they have not exhausted administrative remedies. Furthermore, there's no concrete injury. It's not traceable to the conduct of the school districts. And it's not likely to be redressed by a favorable decision. I'd like to point, Your Honor, to there's a case recently decided by this court, I believe, authored by Judge Howard in UMass Lowell. It was challenged to a vaccination policy decided last summer, where it says, if an event occurs while a case is pending, that makes it impossible for the court to grant any effectual relief, whatever, to a prevailing party, the action must be dismissed. Furthermore, there's a recent unpublished Sixth Circuit case. There's one out of the Ninth Circuit, all dismissing cases as moot. What my brother fails to address in his brief is there's not a single court that I'm aware of in the U.S., either at the district court or the court of appeals level, that has found any merit to these claims where, based as my VAG's office has noted, this is an individualized relief. That is why you defer to the expertise of the BSEA. They chose not one settled their case and the other two did not pursue them to the full exhaustion that they could have, and they had the resources to do it. I'd also just like to mention that this case has broad implications nationally. There's no grounds for system-wide relief in this case, nor is there any indication on the mootness issue that this is likely of repetition and capable of yet evading review. There's COVID vaccines, there's schools have returned to in-person. Just a few months ago, I think it's in the AG's brief, the federal government has indicated on or about May 11th that the COVID emergency has ended. There's no indication of a capable review. Speculative, or as the appellant says in their brief, that it's plausible that it could reoccur is not the appropriate standing. There's no case law that says a plausible means it survives. Furthermore, just briefly, we would argue that there's no standing on the ADA claims, the Section 1983 claims, the RICO claims, which has been dismissed in numerous jurisdictions, including in the Southern District of New York. And I did just, I glossed over it, but the Sixth Circuit unpublished decision, which I'm happy to provide to the court, which just came out in the last few weeks, is Simpson Block versus Michigan Department of Education. Would you send that to us in the 28-J letter, please? Yes, I will. That court, again, said they basically dismissed the case, some mootness cases, and distinguished it from the U.S. Supreme Court cases in Lyons and Clapper. And for all those reasons, I'd request that the court respectfully affirm the district court's decision. Thank you. Thank you. Thank you, counsel. At this time, counsel for the appellant has a three-minute rebuttal. Please introduce yourself. In respect to these claims, there is a statute of limitations. It's either two or three years. I believe it's two. It could vary from state to state, because states can impose a different statute outside the IDEA. But if you don't bring a cause of action within those two years, let's say you're challenging an IEP from 2020, and you eventually go along with the program and find out your child is regressing, you can't be barred from bringing a cause of action with respect to the 2020 IEP. Of course, you can always bring an administrative action since your child is regressing to formulate an IEP that will help the child no longer regress. Just to be clear, that the children withdrew from the Somerville School, they haven't withdrawn from this action. I believe there was a question, is there a plaintiff left in the action? Yes. The fact that the plaintiff may move out of the school district if harm is caused while the plaintiff is in the school district, the plaintiff can still recover under the IDEA and other causes of action from the district. You see that in cases where children relocate from one state to another. But on the mootness analysis, if you're relying on the capable of repetition exception, that has to be capable of repetition involving the same parties, same parties plaintiff. And if two of the named plaintiffs have graduated and are no longer in the schools, and the third is out of the school districts that are affected by this suit, then on that issue, then that capable of repetition exception wouldn't be available to you. Your Honor, I would argue that capable of repetition, but evading review, at least as to the younger child, even though the child moved out of the district, this is the whole point, that life goes on as these cases wind their way through the court. As the Supreme Court said in that case that I cited, the kids were 34 by the time they were challenging the First Amendment statute that they were when they went to college. College had changed the rule on the campus. The kids had moved out of state. It was no longer applicable to them. But the Supreme Court said that that case, they had standing and it wasn't moot. I understand, Your Honor. I would just say that given that students with disabilities get an IEP annually, this student can move back into the district. Wherever this student is within the state, this student will still be applying for an IEP. School closures were statewide. So this can happen again with respect to that younger plaintiff. I would just also say, to say there's no particularized injury in addition to the ones I mentioned before about regression and failing to make the progress you're supposed to under the IEP. Again, a denial of a fate is an injury in and of itself. So that if the school districts or if there was a violation of the IBEA such that it denied these children a right to a free appropriate public education, that is a damage and that is alleged in the complaint. Thank you. Thank you. Thank you, counsel. That concludes argument in this case.